# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

JOHN E. HYDE,

    Plaintiff,

v.                                                              Civil No. 05-CV-10154-BC

COMMISSIONER OF                                DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                                 MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

**II.    REPORT**

    **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

benefits and supplement security income benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 47 years of age at the time of the most recent administrative hearing and has completed a high school education. (Tr. at 73.) Plaintiff's relevant work history included work as a bus driver for 15 years. (Tr. at 68.)

Plaintiff filed his first claim for disability benefits on August 2, 2001. (Tr. at 58.) This claim was denied at the initial administrative stages. (Tr. at 35.) Plaintiff then filed the instant claims on August 9, 2002, alleging that he became unable to work on June 5, 1998. (Tr. at 61-63, 330-32.) These claims were also denied initially. (Tr. at 36, 333-337.) In denying Plaintiff's claims, the Defendant Commissioner considered disorders of the back and asthma as possible bases of disability. (*Id.*)

On August 12, 2004, Plaintiff appeared with counsel before Administrative Law Judge Golden (ALJ), who considered the case *de novo*. In a decision dated October 7, 2004, the ALJ found that Plaintiff was not disabled. (Tr. at 17-27.) Plaintiff requested a review of this decision on October 13, 2004. (Tr. at 14.)

The ALJ's decision became the final decision of the Commissioner on April 15, 2005, when the Appeals Council denied Plaintiff's request for review. (Tr. at 6-8.) On June 10, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*

*of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human*

*Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review).  Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility.  *Garner,* 745 F.2d at 387-88.

### C. Governing Law

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994).  "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

4

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*)  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, both require a finding of disability for the award of benefits.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three:  If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health &*

5

*Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D.     Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen by Dr. David M. Montgomery, M.D., at Sportopaedics on April 24, 1992. Plaintiff was 34 years old and a bus driver at the time. He reported having back and bilateral leg pain for about a month after twisting to get out of his seat on the bus. He reported having a long history of back and neck pain and that he treated with a chiropractor on a regular basis. Examination revealed that Plaintiff could forward flex 70 degrees of the normal 90 degrees and that he had no motor deficit in the lower extremities. X-rays of the lumbosacral spine were normal, and Plaintiff was diagnosed with myofascial strain and possible lumbar radiculopathy.[1] Dr. Montgomery recommended a CAT scan of the lumbosacral spine and that Plaintiff continue with physical therapy. He stated that Plaintiff should remain off work until seen again in four weeks. (Tr. at 303.)

A CT scan of the lumbar spine was obtained on May 26, 1992. The scan revealed "[d]egenerative disc disease at L4-5 with a posterior lateral protrusion on the left and evidence of calcification of longitudinal ligament or a bony spur at this level." (Tr. at 238, 246, 299.)

---

[1]Radiculopathy is defined as "any disease or abnormality of a dorsal or ventral (sensory or motor) spinal nerve root from the point where it merges with the spinal cord (or brain stem) to the point where it joins its companion root (a motor or a sensory) to form a spinal nerve." 5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE R-10.

Plaintiff returned to Dr. Montgomery on June 10, 1992, stating that he was doing better, and that most of the pain was in his back, with no significant leg pain and only occasional discomfort in the right buttock. Examination revealed that Plaintiff could forward flex 70 degrees and that he had no motor deficit. Dr. Montgomery recommended continued physical therapy with instructions to be seen again in four weeks. The doctor felt that Plaintiff should then be able to return to work. (Tr. at 296.)

On July 13, 1992, Plaintiff returned to Dr. Montgomery for a follow-up visit. Plaintiff reported that almost all of his pain was in his back, and that he had rare discomfort in the right thigh. He was able to forward flex 40 degrees. Dr. Montgomery did not feel that surgical intervention was necessary and recommended a back exercise program. He stated that Plaintiff could return to work the next day with no lifting over 15 pounds. (Tr. at 292.) On July 17, 1992, Plaintiff returned to Dr. Montgomery stating that his employer would not let him return to work with the 15-pound weight restriction, despite the fact that his job had nothing to do with lifting. (Tr. at 290.) Dr. Montgomery agreed to allow Plaintiff to return to work without restrictions since his job as a bus driver did not require lifting. (Tr. at 280.)

On January 5, 1996, Plaintiff returned to Dr. Montgomery for an employment screening exam. The doctor reported that Plaintiff continued to work as a bus driver and has had occasional low back pain at the end of some days, but stated that he was not having any radicular discomfort at all. Physical examination revealed that Plaintiff had full range of motion of his back and no motor deficit. An x-ray showed mild degenerative changes. The doctor stated that Plaintiff had a calcified disc herniation but that he could continue his work as a bus driver without restrictions. (Tr. at 286.)

On October 29, 1995, Plaintiff reported to William Beaumont Hospital with difficulty breathing. Plaintiff stated that his chest felt tight and that he felt short of breath and had never felt that way before. He stated that he had had a cough over the past two days but did not have fever, chills, nausea or vomiting. Plaintiff stated that he smoked four cigars a day but no cigarettes. He also reported that he had a history of hayfever but no asthma. On examination the doctor noted some wheezing but heart rate and rhythm were regular. Plaintiff was given two breathing treatments and Prednisone. After the treatments, there was marked improvement in his respiratory status with only minimal wheezing and good air exchange. The doctor's final impression was that of acute asthma. Plaintiff was discharged with prescriptions for asthma and told to return if symptoms redeveloped. (Tr. at 150-51, 222-23.) Plaintiff reported to the outpatient clinic at William Beaumont Hospital on October 31, November 7, and December 8, 1995, with asthma symptoms. (Tr. at 216-17.)

On August 13, 1997, Plaintiff reported to Beaumont Hospital emergency room with a laceration to the nose after being hit with a metal bar. He reported having no pain, and the lacerations were sutured, and plaintiff was discharged. (Tr. at 140, 239, 229.)

Plaintiff was treated at the Beaumont Internal Medicine Clinic on occasions during 1998 for difficulty breathing and allergic rhinitis with asthma. (Tr. at 213-15.)

On August 30, 2001, Plaintiff was examined at the request of the Disability Determination Service. Plaintiff was diagnosed with bronchial asthma, well controlled with medication, and an alleged history of low back pain due to a herniated disc at the L4-5 level. The doctor found no abnormal physical findings in the lumbar spine during the examination. (Tr. at 166-68.)

In a letter dated October 3, 2002, Dr. Erwin Pear reported that he had examined Plaintiff at the request of the Disability Determination Service. Plaintiff reported having asthma attacks

8

several times a week. The doctor detected wheezes, rales, rhonchi, pleural rub or areas of consolidation upon examination. Plaintiff's heart showed regular sinus rhythm with no murmurs, shocks or thrills, and no evidence of enlargement or failure. Cranial nerves were intact. Grip strength was normal, and he could get on and off the examining table, lie down and sit up, with some complaint of distress in his back. Dr. Pear concluded that Plaintiff had a history of asthma which flared up occasionally causing him to report to the hospital and that he had a ruptured disk at L4, L5 which was diagnosed in 1992. He stated that Plaintiff's range of motion was decreased with flexion at 65 degrees, extension 12, right lateral flexion 18, left lateral flexion 15, and right and left rotation 20. He sated that Plaintiff reported only being able to stand approximately 20 minutes before his back started to hurt. (Tr. at 174-76.)

On February 19, 2003, Plaintiff was seen by Dr. Montgomery for evaluation of his back. The doctor reported that he had not seen Plaintiff in nine years but that Plaintiff was experiencing increased back pain and thigh and leg pain over the past year. Physical examination revealed no definite motor deficit, reflexes were symmetric, and straight leg raising was negative. An x-ray of the lumbar spine showed minimal degenerative changes at L4-5. The doctor diagnosed chronic back pain with radicular symptoms and recommended an MRI scan. (Tr. at 272.)

A x-ray report dated March 27, 2003, showed that Plaintiff had anterior spur formation along the lumbar spine with minimal narrowing of the disc space between L4-L5, L5-S1. The final impression was degenerative arthritis of the lumbosacral spine. (Tr. at 256.)

An MRI examination was conducted on April 12, 2003, and showed the following: "1) facet hypertrophic arthropathy and narrowing of the neural foraminal throughout the entire lumbar region, most severe on the left side at L2-L3 and L5-S1[;]  2) a broad central posterior and left

paramedian as well as foraminal disk protrusion at L5-S1[;] and 3) minimal degenerative retrolisthesis of L1 on L2 of approximately 2-3 mm." (Tr. at 183, 188.)

An electromyographic test report dated April 21, 2003, was normal and showed no evidence of radiculopathy, plexopathy or peripheral neuropathy in the lower extremities. (Tr. at 310-11, 312-13.)

Plaintiff saw Dr. Montgomery again on May 7, 2003. He reported that the Neurontin that he was taking was helping with his leg pain and that he was only suffering from lumbar back discomfort. The doctor reported that the MRI showed degenerative disc disease at L5-S1, L4-5, L2-3 and L1-2 levels. The doctor still recommended conservative treatment instead of surgery. (Tr. at 266.)

Plaintiff was evaluated by Dr. J. McCullough, an orthopedic surgeon, on August 19, 2003. The doctor found that Plaintiff had mild to moderate limitation of motion in the lumbar spine, but no deformity, muscle spasm, discoloration or increased heat. Sensation, strength and coordination were intact in both lower extremities. Straight leg raising was negative to 90 degrees bilaterally. The doctor diagnosed herniated lumbar disc and degenerative disc disease of the lumbar spine. Dr. McCullough recommended fairly severe restrictions of Plaintiff's physical activities on a permanent basis. He felt that Plaintiff needed light or sedentary activities with a sit/stand option and requiring only minimal walking. (Tr. at 315-16.)

At the administrative hearing, a vocational expert (VE) testified. She characterized Plaintiff's prior work as a bus driver to be unskilled and medium in exertion. (Tr. at 347.) In response to questions from the ALJ, the VE identified 4,800 assembly jobs, 5,000 packing jobs, 1,800 video surveillance monitoring jobs, 6,800 light exertion assembly jobs, 4,600 light exertion

10

inspector jobs, and 3,400 light exertion packing jobs, all of which could be done either sitting or standing. (Tr. at 348.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the onset of his disability. (Tr. at 26.) At step two, the ALJ found that Plaintiff's asthma and degenerative disc disease were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (*Id.*)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (*Id.*)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff, in his *pro se* filing, argues in effect that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest that substantial evidence supports the residual functional capacity determination of the ALJ. As early as 1992, Dr. Montgomery found no evidence of motor deficits in the lower extremities. (Tr. at 303.) Although a CT scan of Plaintiff's lumbar spine in May 1992 was abnormal, Plaintiff reported to Dr. Montgomery in June of that year that he was doing better and had no significant leg pain and only occasional discomfort in the right buttock. (Tr. at 296.) In January 1996, Dr. Montgomery reported that Plaintiff had full range of motion in his back, and again exhibited no motor deficits. (Tr. at 286.) The doctor felt that Plaintiff could continue his work without restriction. (*Id.*) Although Plaintiff was later diagnosed with asthma, records of Beaumont Hospital indicate that his symptoms underwent "marked improvement" with medications. (Tr. at 150-51, 222-23.) A physical examination conducted by Dr. Montgomery in February 2003 revealed no definite motor deficits, symmetric reflexes, and negative straight leg raising tests. (Tr. at 272.) Although an MRI examination in April 2003 showed abnormalities in the vertebrae of the lower back, electromyographic testing conducted two weeks later was normal

12

and showed no evidence of abnormalities in the lower extremities. (Tr. at 183, 188, 310-11, 312-13.) In fact, in a medical examination report submitted to the Michigan Family Independence Agency in mid-May 2003, Dr. Montgomery indicated that Plaintiff's condition was stable and was improving with treatment. (Tr. at 265.) In addition, the doctor felt that Plaintiff could occasionally lift up to 25 pounds and could undertake both simple grasping and fine manipulating tasks with both hands. (*Id.*) In August 2003, Dr. McCullough similarly found normal strength, sensation, and coordination in the lower extremities and negative straight leg raising tests. (Tr. at 315-16.)

In Plaintiff's *pro se* submission, he argues that the ALJ improperly disregarded the findings of a number of his physicians. (Dkt. 13 at 2.) After review of the medical evidence of record from these physicians, I suggest that their findings do not mandate the conclusion that Plaintiff was disabled. In fact, in July 2003, Plaintiff reported to Dr. Alimario that his problems had improved by 40%, although Plaintiff still continued to suffer from low back pain. (Tr. at 261.) In that same report, Dr. Alimario states that Plaintiff "has shown good improvement" and would benefit from further physical therapy. (*Id.*)

Attached to Plaintiff's *pro se* submission is a medical record not part of the administrative record, which presumably Plaintiff requests the court to review. However, in this circuit the record is closed at the administrative law judge level, and later submitted materials are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Moreover, the Sixth Circuit has long recognized that a court may only remand disability benefits cases for review of new evidence when a claimant establishes that new material evidence is available and shows good cause for failure to incorporate such evidence into prior proceedings. *Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551 (6th Cir. 1984). Since Plaintiff in this case has met neither of these sets of

conditions, I suggest that a remand to the Social Security Administration for review of this document is not authorized under the Social Security Act.

I further suggest that the ALJ's findings are also not inconsistent with the opinions of the vocational expert which came in response to appropriate, but minimally useful, hypothetical questions. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

After review of the record, I therefore conclude that the decision of ALJ Golden, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
|  | s/ *Charles E Binder* |
|  | CHARLES E. BINDER |
| Dated: May 10, 2006 | United States Magistrate Judge |

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson, and served in the traditional manner on John Hyde and Honorable David M. Lawson.


Dated:  May 10, 2006                             By      s/Mary E. Dobbick
                                                 Secretary to Magistrate Judge Binder

15